IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT MCKINLEY WINSTON<br><br>*Defendant.* | CASE NO. 3:01–cr–00079<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This habeas case is before the Court in an unusual posture. Citing *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*"), Defendant filed his petition on February 10, 2016, which the parties briefed. (Dkts. 58, 62, 64). I issued an opinion (dkt. 65, *available at* 2016 WL 2757451 (W.D. Va. May 11, 2016)) and an order denying Defendant's petition, but I also granted a certificate of appealability. (Dkts. 66, 67). Before the judgment became final, Defendant moved for reconsideration in light of intervening precedent. (Dkt. 68). The parties briefed that motion (dkts. 73, 74), which I denied. (Dkt. 76, *available at* 2016 WL 3963234 (W.D. Va. July 21, 2016); dkt. 77 (Order)). Defendant timely noted an appeal.

The appeal presented an important post-*Johnson II* question: Does Virginia robbery qualifies as a violent felony under the Armed Career Criminal Act ("ACCA")? Expedited briefing in the Fourth Circuit occurred, oral argument was scheduled, and other cases were held in abeyance pending a decision. But it was discovered—for the first time on appeal—that Defendant had filed a prior § 2255 petition, a fact not apparent from the criminal docket in this case. Thus, the February 10th petition had not received pre-filing approval from the Court of Appeals, which meant this Court and the Fourth Circuit lacked jurisdiction. *See* 28 U.S.C. §

2255(h). On a joint motion, the Fourth Circuit dismissed the petition but treated the notice of appeal as a request to file a successive petition, which it granted. (Dkt. 83). The Fourth Circuit, however, retained the oral argument date for October 27, 2016, so it could move forward with an appeal from this Court's eventual ruling on the now-authorized petition, which Defendant filed on September 12, 2016. (Dkt. 88).

Upon request of the parties (dkts. 86, 87, 88), the Court will incorporate and adopt the parties' prior submissions pertaining to the February 10th petition. All arguments raised therein are considered preserved. Relatedly, the Court will adopt and incorporate its prior opinions and orders. For the reasons stated in those filings, the Court will deny Defendant's September 12th petition and grant the Government's motion to dismiss. For completeness of the record on appeal, the Court also considers (and rejects) an argument the Government asserts is a threshold bar to considering a successive habeas petition.

I.  **Adoption of Prior Submissions**

Because the February 10th petition was unauthorized, the submissions, opinions, and orders pertaining to it were a nullity for lack of jurisdiction. So the parties ask that their prior submissions be adopted and deemed applicable to the instant petition. The Court will oblige.

II. **Consideration of Requirements for Successive Petitions in 28 U.S.C. § 2244**

There remains, however, a (slightly) new argument that the Court must consider. The Government observes that "Winston is now in a different procedural posture than it was understood he was when his Petition was initially considered by the Court." (Dkt. 86 at 2). Section 2244(b)(4) of Title 28 instructs that a district court "shall dismiss any claim presented in a second or successive application that the court of appeal has authorized to be filed unless the applicant shows that the claim satisfies the requirements" elsewhere found in § 2244. The

Government argues Defendant cannot satisfy the requirement in § 2244(b)(2)(A) that his claim "*relies* on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously available." (emphasis added). It contends that Defendant's petition turns "entirely" on a statutory interpretation case regarding the ACCA's force clause, *Johnson v. United States*, 559 U.S. (2010) ("*Johnson I*"), not on *Johnson II*.

### A. The Court's Prior Rulings Reject the Government's Position

Although not presented with the identical legal issue, my May 11th opinion explained, in rejecting the Government's statute of limitations defense, why Defendant's petition in fact relies on *Johnson II*. (Dkt. 65). In surveying the ACCA, *Johnson I*, and *Johnson II*, I observed that the petition "*depends upon* the interplay of *Johnson I* and *Johnson II*." (*Id*. at 3 (emphasis added); *see id*. at 4 (petition "does not rest on *Johnson I* or *II* independently, but on them together . . ."). This is so because *Johnson II* eliminated an escape-hatch—that is, a statutory hook on which the Government otherwise could have hung Defendant's ACCA enhancement if robbery did not satisfy the force clause. (*Id*. at 5-6 & n.2). As numerous post-*Johnson I*, pre-*Johnson II* appellate cases make clear (*id*. at 6 n.2), the Government frequently and successfully used the residual clause in precisely that way, a point which meant that Defendant had no reason to bring a futile petition prior to *Johnson II*. Thus, the decision in *Johnson II* afforded Defendant an avenue of relief that was previously unavailable to him, and his petition utilizes that decision.[1]

---

[1] The Government's procedural attack on Defendant's petition as focusing solely on *Johnson I* is likely better understood as a substantive argument that—even after receiving the benefit of *Johnson II*—Defendant has not suffered prejudice, because his conviction nonetheless falls within the force clause. *See infra* Part II.D.2. (analogizing certain *Johnson II* petitions to cases involving unconstitutional jury instructions and evaluation of prejudice). In cases presenting a similar *Johnson I–Johnson II*–robbery dynamic, the Western District of New York and Middle District of Pennsylvania have analyzed the issue similarly to this Court. *See Diaz v. United States*, No. 1:11-CR-0381-MAT, 2016 WL 4524785, at *2, 5 (W.D.N.Y. Aug. 30, 2016); *United States v. Harris*, No. 1:CR-06-0268, 2016 WL 4539183, at *9, 13 & n.21 (M.D. Pa. Aug.

– 3 –

As stated above, the Court adopts its prior reasoning. It also adds three bases for its conclusion in Parts II.B-D.

## B. The Plain Text of § 2244(b)(2) Does Not Support the Government's Position

"We begin, as always in deciding questions of statutory interpretation, with the text of the statute." *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013). In so doing, the Court applies "the fundamental canon of statutory construction that words will be interpreted as taking their ordinary, contemporary, common meaning." *United States v. Serafini*, 826 F.3d 146, 149 (4th Cir. 2016) (internal quotations omitted).

Section 2244(b)(4) requires dismissal of this petition if other requirements in 28 U.S.C. § 2244 are not met. The Government points to § 2244(b)(2)(A), which states:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed *unless* . . . the applicant shows that the claim *relies* on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

---

31, 2016).
     Other district courts have employed analogous reasoning. *E.g., United States v. Navarro*, No. 2:10-CR-2104-RMP, 2016 WL 1253830, at *3 (E.D. Wash. Mar. 10, 2016) (Peterson, J.) (holding *Johnson II* provided Defendant with ability to collaterally attack ACCA designation because prior felonies "could have been predicate 'violent felonies' under the residual clause"; accepting argument that Defendant relied on *Johnson II*—and not prior statutory case, as the Government argued—because, without *Johnson II*, Defendant "has no claim that he was not an armed career criminal because regardless of [other caselaw] and its effect on the [enumerated] clause," his prior convictions would have fit the residual clause); *United States v. Ladwig*, -- F. Supp. 3d--, No. 2:03-CR-00232-RHW, 2016 WL 3619640, at *4-5 (E.D. Wash. June 28, 2016) (Whaley, J.) (same, and explaining why—when faced with Government's argument that other ACCA clauses supported enhancement—courts should apply current precedent to those clauses, even to successive petitions that raise *Johnson II* challenges); *see Smith v. United States*, No. 1:05-CR-150-CLC-WBC, 2015 WL 11117627, at *6 (E.D. Tenn. Nov. 24, 2015) (applying Sixth Circuit caselaw from 2011, even though Defendant was sentenced in 2006, when assessing whether prior conviction fits within force clause); *see also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993) (applying subsequent caselaw developments when assessing prejudice in habeas context); *Mosby v. Senkowski*, 470 F.3d 515, 524 (2d Cir. 2006) (same).

– 4 –

(emphasis added). The Government contends Defendant's "claim is rooted entirely in the application of" *Johnson I*, and "thus does not rely upon a new rule of constitutional law." (Dkt. 86 at 2).

Here, the critical word in the statute is "relies." *See In re Hubbard*, 825 F.3d 225, 229 (4th Cir. 2016) (placing emphasis on that portion of statute). The Government's position is that § 2244(b)(2)(A) requires that Defendant's petition must rest squarely and solely on *Johnson II*. If *Johnson I* plays any role, so the argument goes, the petition must be dismissed.

"Rely" is defined as: "to be dependent [on]," MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993); "to trust or depend" upon, WEBSTER'S NEW WORLD DICTIONARY (1983), or; "to find support: depend," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY. While these definitions include the notion of dependence, they do not connote exclusivity: Reliance on one thing does not foreclose reliance on another, even regarding the same objective. A person relies on his car to get to work, but he might also rely on other methods at times (*e.g.*, bus, train). And even when he relies on his car, he also (whether explicitly or implicitly) relies— *i.e.*, is dependent upon—any number of other necessary but not sufficient conditions: that the roads are passable, that his GPS is accurate, *etc*.

Just as significantly, Congress did not add a restrictive qualifier to "relies" in § 2244(b)(2)(A). Congress could easily, if it wished to do so, have said that a successive petition must "rely wholly" or "rely exclusively" or "rely entirely" or "rely only" on a new, retroactive constitutional rule. But it did not do so, and that omission is significant given both the definition and commonplace understanding of the word "relies."

Thus, under the ordinary meaning of "relies," a petitioner's claim must "depend upon" a new, previously-unavailable, retroactive rule of constitutional law, but it need not depend upon

– 5 –

*only* that rule. It is sufficient to avoid the procedural bar if—as here—the new constitutional rule does some work in the petition. A petitioner's claim is not procedurally foreclosed because it turns merely upon the interaction (or as the Court put it earlier, "interplay") of the new constitutional rule with some other legal provision or principle.

### C. Constitutional Avoidance Favors the Court's Interpretation

The canon of constitutional avoidance—"a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts," *Clark v. Martinez*, 543 U.S. 371, 381 (2005)—also supports the Court's reading.

The Suspension Clause restricts Congress's authority to suspend habeas corpus. U.S. Const., art. I, § 9, cl. 2. The Supreme Court has cited the Clause as a reason to construe a statute against the foreclosure of habeas consideration. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001) (cautioning to construe habeas statute to avoid "substantial constitutional questions" under the Suspension Clause implicated if law "entirely preclude[d] review of a pure question of law by any court").

Other Courts of Appeals have also recognized that—in the context of other procedural limitations imposed by § 2244—the Suspension Clause provides good reason to side with a plausible statutory interpretation that does not require confronting thorny constitutional questions. *See Muniz v. United States*, 236 F.3d 122, 128–29 (2d Cir. 2001) (avoiding "difficult constitutional" question because "procedural bar" on habeas may create "an unreasonable burden upon petitioners sufficient to raise serious issues under the Suspension Clause"); *see also In re Page*, 179 F.3d 1024, 1026 (7th Cir. 1999) (Posner, J.) (observing "possibility that a claim in no sense abusive, because it could not have been raised earlier . . . would have sufficient merit that

– 6 –

the barring of it would raise" issue under Suspension Clause). Finally, two members of the Eleventh Circuit have recently gestured to the existence of Suspension Clause problems in the context of *Johnson II* cases, and suggested that some of their Court's jurisprudence has developed to avoid them. *In re Jones*, -- F.3d --, No. 16-14053-J, 2016 WL 4011143, at *5, 8 (11th Cir. July 27, 2016) (Rosenbaum and Jill Pryor, JJ., concurring).

Given that the merits of Defendant's petition present a pure question of law, the procedural limitation posed by the Government's interpretation of § 2244(b)(2)(A) would implicate a serious constitutional question under the Suspension Clause. The Court's interpretation avoids that confrontation.

> **D.    Section 2244(b)(2)(A) Does Not Require the Defendant to Affirmatively Prove that He Was Sentenced Under the Residual Clause, But Merely that the Residual Clause May Have Been Used**

Lastly, the Government's citation to § 2244(b)(4)(A) alludes to the contention that Defendant must (but cannot) affirmatively identify in the record under which ACCA clause the sentencing judge thought his predicate robbery conviction fell. This strain of argument arose during prior briefing, in which the Government asserted that the limitations provision in § 2255(f)(3) required Defendant to "establish that [his prior conviction] previously qualified as [a] predicate offense[] *only* under the residual clause." (Dkt. 62 at 2 (emphasis added)). Now, the Government cites an Eleventh Circuit case, *In re Moore*, -- F. 3d --, No. 16-13993-J, 2016 WL 4010433 (11th Cir. July 27, 2016), for that proposition in the successive petition/§ 2244(b)(2)(A) context. (Dkt. 86 at 3).

The Court briefly commented on this issue in its May 11, 2016 opinion, albeit while the matter was conceptualized as a statute of limitations question. (Dkt. 65 at 4-6 & nn.1-3; *see also In re Hubbard*, 825 F.3d 225, 230–33 (4th Cir. 2016) (repeatedly observing that Government

was making "merits argument" in opposition to authorization for successive petition).[2] The problem of identifying the nature of an ACCA enhancement—Did it rest on the residual clause? A different clause? Some combination thereof? What if you cannot tell?—has vexed courts after *Johnson II*. Because these questions are necessary in a case like this and would benefit from guidance by the Fourth Circuit, and because the procedural posture of the case has changed (as this is now a successive petition), the Court supplements its prior discussion.[3]

> 1. **The Eleventh Circuit's dueling *dicta*: The burden of a *Johnson II* claimant on a second or successive petition**

Two recent, published decisions from different panels in the Eleventh Circuit sketch out possible answers to the above questions. Both cases presented the issue of whether to authorize a second or successive petition. Both cases granted authorization. Both cases employed *dicta* to "instruct" the district court how to evaluate the merits of successive or second petitions. But the cases differed sharply in their approach.

On one hand, *Moore* purported to command the district court that it "must decide whether or not [Defendant] was sentenced under the residual clause . . . ." 2016 WL 4010433, at *3. *Moore* emphasized:

> In other words, the district court cannot grant relief in a § 2255 proceeding *unless* the movant meets his burden of showing that he is entitled to relief, and in this context the movant cannot meet that burden *unless he proves that he was*

---

[2] While cursory allusions were made to the force clause at the sentencing stage—including the Government's contention that the ACCA enhancement could apply in "many different ways"—the sentencing judge did not specify under which clause the robbery conviction fell. At most, the sentencing judge initially referred to the force clause when discussing authorities about Defendant's prior *rape* conviction, before ultimately stating only that that conviction was a "crime of violence." (Dkt. 37 at 25-26). He then concluded that the robbery offense was likewise a so-called crime of violence, by which he surely meant—in ACCA parlance—that it was a "violent felony."

[3] The Court also thinks this analysis complements that in Part II.A-C. *Compare supra* footnote 1, *with* Part II.D.2, *infra*.

> *sentenced using the residual clause* and that the use of that clause made a difference in the sentence. If the district court cannot determine whether the residual clause was used in sentencing and affected the final sentence—*if the court cannot tell one way or the other*—the district court must deny the § 2255 motion. It must do so because the movant will have failed to carry his burden of showing all that is necessary to warrant § 2255 relief.

*Id.* at *4 (emphasis added).

Six days later, a different panel issued *In re Chance*, -- F.3d--, No. 16-13918-J, 2016 WL 4123844 (11th Cir. Aug. 2, 2016). *Chance* opined—likewise in *dicta*—that *Moore*'s *dicta* "seems quite wrong" for several reasons, and proceeded "to tell the other side of the story." *Id*. at *4.

First, *Moore* "implies that the district judge deciding" a successive habeas petition "can ignore decisions from the Supreme Court that were rendered" after sentencing "in favor of a foray into a stale record." *Id*. at *4. But *Chance* believed that in "applying the categorical approach, it would make no sense for a district court to ignore" intervening, relevant precedent. *Id*.; *see also supra* footnote 1 (compiling cases applying current law in habeas context, *Johnson II* context, or both).

Second, "[n]othing in the law requires a judge to specify which clause of § 924(c) . . . it relied upon in imposing a sentence," a point which makes *Moore*'s proposal "unworkable." *Id*. at *4. As Judge Urbanski has observed:

> [Such] omissions are unsurprising—at the time [defendant] was sentenced, there was no need to distinguish between the force and residual clauses, nor was there a need to invoke any specific clause when finding that [defendant] qualified as an armed career criminal.

*United States v. Gabourel*, No. 7:03-CR-045, 2016 WL 3453479, at *3 (W.D. Va. June 17, 2016).

Finally, *Moore*'s rule would create disparities in habeas relief based merely on unconsidered utterances during a sentencing hearing: Did the judge—with no legal impetus to

– 9 –

be specific—happen to say "residual clause" at sentencing? *Id*. at *5. This anomaly implicates equal protection, due process, and fundamental fairness concerns underlying "the principle of treating similarly situated defendants the same." *Id*.

For those reasons, *Chance* proposed an alternative approach where "it makes no difference whether the sentencing judge used the words 'residual clause' or 'elements clause' or some similar phrase." *Id*. at *5. Rather:

> the required showing is simply that § 924(c) *may* no longer authorize his sentence as that statute stands after *Johnson*—not proof of what the judge said or thought at a decades-old sentencing. No matter what the judge said, it is precedent from the Supreme Court and this Court that dictates which offenses meet § 924(c)'s definitions.

*Id.* (emphasis added).

*Chance* convincingly explains why *Moore* is wrong. But *Chance* does not put forth an affirmative analytical justification for its approach. Luckily, other courts have supplied a persuasive framework.

### 2. The analogy to unconstitutional jury instructions

When facing a *Johnson II* petition that lacks an illuminating sentencing record, some courts treat the problem much like a general verdict reached after an unconstitutional jury instruction. As the Supreme Court explained:

> a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground. The cases in which this rule has been applied all involved general verdicts based on a record that left the reviewing court uncertain as to the actual ground on which the jury's decision rested.

*Zant v. Stephens*, 462 U.S. 862, 881 (1983); *see New York Times Co. v. Sullivan*, 376 U.S. 254, 284 (1964); *United States v. Moye*, 454 F.3d 390, 400 n.10 (4th Cir. 2006) ("reversal is required when a case is submitted to a jury on two or more alternate theories, one of which is legally . . .

– 10 –

Case 3:01-cr-00079-NKM-RSB   Document 89   Filed 09/16/16   Page 10 of 12   Pageid#: 219

inadequate, the jury returns a general verdict, and it is impossible to discern the basis on which the jury actually rested its verdict"); *United States v. Taylor*, 966 F.2d 830, 834 (4th Cir. 1992); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991).

Using this methodology, courts have held that—when unclear on which ACCA clause the sentencing judge rested a predicate conviction—the petitioner's burden is to show only that the sentencing judge may have used the residual clause. *See Diaz v. United States*, No. 1:11-CR-0381-MAT, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016)[4]; *United States v. Ladwig*, No. 2:03-CR-00232-RHW, 2016 WL 3619640, at *3-4 (E.D. Wash. June 28, 2016)[5]; *United States v. Navarro*, No. 2:10-CR-2104-RMP, 2016 WL 1253830, at *3 (E.D. Wash. Mar. 10, 2016).[6] Of course, like jury instructions, this procedure is subject to harmless error analysis—which in this case invites the Government to show (on the merits) that the predicate offense otherwise fits within the ACCA's force or enumerated clauses.

While this Court's May 11th and June 21st opinions never explicitly cited this framework, they applied it. *Johnson II* negates reliance on the residual clause for Defendant's

---

[4] "Where, as here, it is unclear upon what portion of the 'violent felony' definition the sentencing court relied, a defendant has 'successfully demonstrated constitutional error simply by showing that the [c]ourt might have relied on an unconstitutional alternative when it found [his] prior convictions for [robbery] . . . were violent felonies." (alterations in original).

[5] "[W]here the record is unclear whether the Court relied on the residual clause or the remaining, constitutional clauses of the ACCA, and the Court's finding. . . may have rested exclusively on the unconstitutional residual clause, [a petitioner has] successfully demonstrated constitutional error simply by showing that the Court might have relied on an unconstitutional alternative."

[6] "Prior to *Johnson,* Defendant's [predicate convictions] could have been predicate 'violent felon[ies]' under the residual clause. As such, until *Johnson,* Defendant's [predicate] convictions remained 'violent felon[ies]' through the ACCA residual clause. . . . The Court cannot assume, without an explicit finding, that [the sentencing judge] relied upon other approaches to conclude that Defendant's underlying convictions were predicate ACCA 'violent felon[ies].'"

– 11 –

predicate robbery conviction. It was unclear which clause the sentencing judge invoked, so Defendant met his initial burden—whether characterized as (in the May 11th opinion) a § 2255(f)(3) limitations issue in an initial petition, or as (in this opinion) a threshold hurdle for a second or successive petition under § 2244(b)(2)(A). But the Government remained free to show harmless error—that, as a matter of law, robbery nonetheless fits within another ACCA clause. And harmless error was what this Court ultimately found: Even applying *Johnson I*'s narrowing of the force clause,[7] robbery still qualified as a predicate offense.

In sum, the parallels are striking between *Johnson II* petitions with a murky sentencing record and general verdicts resting on unconstitutional jury instructions. Both situations implicate individuals' constitutional rights. In both situations, a court's review of those rights is frustrated by an opaque record. And that opacity was caused by a blameless initial decision-maker: Just as we do not expect jurors to identify (and disregard) unconstitutional jury instructions, so too there was no reason for a sentencing judge, pre-*Johnson II*, to identify the specific clause for an ACCA predicate offense.

## CONCLUSION

The parties' motions that their previous filings apply to Defendant's instant petition will be granted. The Court will adopt its prior rulings and, as stated therein and herein, deny Defendant's motion to vacate his sentence and grant the Government's motion to dismiss. The Clerk is directed to send a copy of this opinion to all counsel. An appropriate order will issue.

Entered this __16th__ day of September, 2016.

*[signature]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[7] *See* dkt. 65 at 6-10; dkt. 76 at 2-6; *see also supra* footnote 1 (citing cases applying subsequent legal developments in habeas cases); *Chance*, 2016 WL 4123844, at *4.